UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HUNGRY HORSE, LLC,                                              Case no. 16-11222 t11

      Debtor.

## **OPINION**

Before the Court is an interim fee application filed by Ken Wagner Law, P.A., former counsel for the debtor in possession. The fee application seeks approval of $193,001.81 in fees, costs, and expenses, for time billed between the petition date and January 31, 2017. The United States Trustee and the Unsecured Creditors' Committee objected to the application, arguing that some of the fees were for clerical work, were duplicative, were for work that did not benefit the estate, were unreasonable, or were supposed to be paid by others. After considering the application, the objections, and the evidence presented at a final hearing, the Court will allow $162,045.16 in compensation.

                                     I.       FACTS

For the limited purpose of ruling on the motion, the Court finds:

Debtor is a limited liability company doing oil field services work in eastern New Mexico. Debtor filed this chapter 11 case on May 17, 2016. On the same day, Debtor filed an application to employ Ken Wagner Law, P.A. ("Counsel") as bankruptcy counsel for the debtor in possession.

The Court approved the application on June 15, 2016, effective as of the petition date. The order provided that all compensation and hourly rates were subject to final Court approval. The order authorized Debtor to pay Counsel 75% of fees and 100% of costs and taxes before final approval. The order further authorized Counsel to seek interim compensation of the remaining

25% no more often than every 120 days.

On February 27, 2017, Counsel filed its application for the period of May 17, 2016 to January 31, 2017. Counsel billed the estate:

| Area | Attorney Hours | Paralegal Hours | Amount |
|---|---|---|---|
| Asset Analysis & Recovery | 0 | .3 | $ 27.00 |
| Asset Disposition | 15.1 | 7.1 | $ 4,791.50 |
| Assumption & Rejection | 6.9 | 4.7 | $ 2,320.50 |
| Budgeting | 1.2 | .2 | $ 348.00 |
| Business Operations | 9.2 | 1.0 | $ 2,620.00 |
| Case Administration | 13.9 | 7.3 | $ 4,479.50 |
| Claims Admin. & Object. | 10.8 | 10.3 | $ 3,897.00 |
| Employment/Fee Apps. | 11.9 | 15.3 | $ 4,649.50 |
| Financing & Cash Collateral | 120.1 | 43.8 | $ 36,969.50 |
| Litigation - AIG | 16.8 | 5.5 | $ 5,115.00 |
| Litigation – Cimarex | 23 | 4.0 | $ 1,350.00 |
| Litigation – J&J Rentals | 1.6 | .5 | $ 485.00 |
| Litigation – McNeill Suit | 114.2 | 23.7 | $ 33,538.00 |
| Litigation – Pilot Suit | 30.8 | 10.1 | $ 9,379.00 |
| Litigation – Rail Masters | .1 | 0 | $ 27.50 |
| Litigation – Tesmec | 45.4 | 14.4 | $ 13,781.00 |
| Litigation – Warren P. & M. | 1.5 | .5 | $ 457.50 |
| Creditor meet./commun. | 56.7 | 17.8 | $ 17,194.50 |
| Plan & Disclosure Statement | 10 | 3.5 | $ 3,202.50 |
| Stay Relief/Adeq. Pro. | 62.1 | 25.9 | $ 19,408.50 |
| Reporting | 26.1 | 22.8 | $ 9,229.50 |
| Tax | .9 | .2 | $ 265.50 |
| Total | 559.4 | 218.9 | $173,536.00 |

Attorneys billed at $275/hour, and paralegals at $90/hour. Counsel seeks approval of $193,001.81, which includes $6,787.95 in costs and $12,677.86 in New Mexico gross receipts tax. $19,701 of the billed fees is for paralegal work. Counsel has been paid $144,962.68.

Counsel billed about $37,000 for cash collateral work. Lea County State Bank is the only cash collateral creditor, with whom Counsel negotiated extensively. The UCC was also active in cash collateral hearings, and in negotiating and reviewing cash collateral budgets and draft orders.

By an order dated January 9, 2017 (the "Joint Representation Order"), the Court approved

Counsel's joint representation of the Debtor and co-defendants John Norris and Vernon Black in *McNeill v. Hungry Horse et al.,* Adv. No. 16-1048 t. The findings in the order include:

> K. . . . the Court finds that Debtor and its members share substantially equal responsibility for the alleged wrongdoing, and should share the fees and expenses accordingly.

The decretal portion provides in part:

> 2. Debtor shall pay 50% of the fees and costs incurred in that adversary proceeding.
> 3. Norris and Black shall pay 50% of the remaining fees and costs, apportioned between them as they may see fit.
> …

Debtor removed the *McNeill* action to this Court on August 12, 2016. On October 21, 2016, Counsel filed an answer to the amended complaint on behalf of all defendants. Three days later the Court entered a stipulated order allowing interim representation by Counsel of Debtor, Norris, and Black.

Counsel states that Debtor's principals began making payments for fees incurred in the *McNeill* litigation after the entry of the Joint Representation Order. It is not apparent from the billing statements how the payments were applied.

Louis Puccini was licensed in 1969, and has extensive experience in chapter 7, 11, and 13 cases. Mr. Puccini was the primary attorney on bankruptcy matters, and billed $135,355. Other attorneys at the firm, including Michael Allison and Ken Wagner, have a combined 50-60 years experience in insurance bad faith litigation (the subject of one of the adversary proceedings).

Mr. Puccini does not use a computer. Instead, he hand writes documents or dictates them to Counsels' paralegals, Debra Paul and Shawna Tillberg. The paralegals spent 90% of their time typing Mr. Puccini's dictation or handwritten drafts. The paralegals' remaining time was spent drafting and filing documents, and sending court filings and letters to clients.

Counsel told Ms. Tillberg and Ms. Paul not to bill for clerical work. Ms. Tillberg kept track of her work on time sheets and turned them in for entry into Counsel's billing system. Ms. Paul did the same, but also marked the time she thought was billable. It is not clear from the record how much of the paralegals' time was billed.

The UCC and UST objected to the fee application on a number of grounds. At the final hearing the following arguments were advanced: (1) fees incurred seeking to recuse the judge and remove a UCC member did not benefit the estate; (2) certain work billed for was clerical and therefore noncompensable; (3) some of the work billed for was duplicative of special counsel's work; (4) the estate is only liable for half of the fees charged in the *McNeill* litigation; (5) Counsel's billing for cash collateral work was not reasonable; and (6) some of work done should have been billed at associate attorney rates.

## II. DISCUSSION

### A. Section 330(a).

Attorney compensation in chapter 11 cases is governed by § 330(a).[1] To be compensable, fees must be for actual and necessary services. § 330(a)(1)(A). Further, fees for those services must be "reasonable." *Id. See also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Section 331 authorizes the allowance of interim compensation and reimbursement for expenses that are otherwise allowable under § 330.

### B. Benefit to the Estate.

Whether services were "necessary" means "whether they were necessary to the administration of, or beneficial toward the completion of, a case under [title 11]." *In re Schupbach*

---

[1] Unless otherwise noted, all statutory reference are to 11 U.S.C.

*Investments, LLC*, 2014 WL 6680122, at *8 (10th Cir. BAP). The potential benefit is measured when the services are provided, not when the fee application is heard. *In re Kitts Development*, 474 B.R. 712, 720 (Bankr. D.N.M. 2012). Unnecessarily duplicative services are not compensable. § 330(a)(4)(A)(i).

      C.      The "*Johnson*" and § 330(a)(3) Factors.

"[B]ankruptcy court[s] must consider the § 330(a)(3) and *Johnson* factors in evaluating whether a proposed fee amount is reasonable . . . ." *In re Market Center East Retail Property, Inc.,* 730 F.3d 1239, 1249 (10th Cir. 2013). Section 330(a)(3) requires courts to consider the nature, extent, and value of the services, taking into account all relevant factors, including:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Section 330(a)(3).

> The so-called *"Johnson"* factors, somewhat duplicative of § 330(a)(3), are:
>
> (1) The time and labor required;
> (2) The novelty and difficulty of the questions;
> (3) The skill requisite to perform the legal service properly;
> (4) The preclusion of other employment due to acceptance of the case;
> (5) The customary fee;
> (6) Whether the fee is fixed or contingent;
> (7) Time limitations imposed by the client or the circumstances;
> (8) The amount involved and the results obtained;
> (9) The experience, reputation, and ability of the attorneys;
> (10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

*Market Center East,* 730 F.3d at 1247 (citing *Johnson*, 488 F.2d at 717-719).

D.  Benefit to the Estate.

The UCC argues that Counsel should not be compensated for its efforts to recuse the judge and remove a major creditor from the UCC. The Court finds that those efforts could have been successful, so the fees should be allowed. *See In re Schupbach Investments*, *LLC*, 2014 WL 6680122, at *8; *In re Kitts Development*, 474 B.R. at 721.

E.  Clerical Work.

Clerical tasks, even when performed by paralegals or attorneys, generally are not compensable. *In re Lady Baltimore Foods, Inc.*, 2004 WL 2192368, at *1 (Bankr. D. Utah) (services such as typing and data entry are clerical in nature and not compensable); *In re Lorenzen*, 2010 WL 5524696, *1 (Bankr. N.D. Ill. 2010); *In re First State Bancorp.*, 2014 WL 1203141, at *5 (Bankr. D.N.M.). Routine court filing is considered clerical, and courts in this district have denied fees for e-filing. *In re Weaver*, 2011 WL 867136 (Bankr. D.N.M.); *In re First State Bancorp.*, 2014 WL 1203141 at *5, n. 18 (submitting orders for entry was clerical). *See also Scadden v. Weinberg, Stein and Associates*, 2013 WL 1751294 (D. Colo. 2013) (in non-bankruptcy FDCPA case, e-filing determined to be clerical).

Work that appears clerical may not necessarily be so. *In re Lady Baltimore Foods*, 2004 WL 2192368, at *2. It could be, for example, that some complex e-filing in chapter 11 cases may be compensable. *See, e.g., In re McNally*, 2006 WL 2348687, at *7–8, 12, and 15 (Bankr. D. Colo.) (e-filing and other tasks that appear clerical may be compensable where the task involves professional or para-professional judgment); *Doe v. Ward,* 282 F. Supp. 2d 323, 334–35 (E.D. Pa. 2003) (in complex litigation, it is often appropriate for an attorney to perform and be compensated

for discovery-related clerical tasks); *In re CF & I Fabricators of Utah, Inc.*, 131 B.R. 474, 492 (Bankr. D. Utah. 1991) (time is compensable where it requires education or experience above that commonly held by secretarial or clerical staff).

The party requesting the fees bears the burden of showing they are compensable. *In re Lady Baltimore Foods, Inc.,* 2004 WL 2192368, at *2 (applicant did not carry its burden of proving that apparently clerical work was actually para-professional); *In re Heck's Properties, Inc.*, 151 B.R. 739, 752 (S.D.W. Va. 1992) ("As noted previously, the burden of proof to show entitlement to fees is, in all fee matters, on the applicant.")

      1.     <u>E-filing</u>. The UST and the UCC assert that time billed for e-filing is not compensable because it is clerical work. The UCC objected to all paralegal fees billed for e-filing, and to the following attorney fees:

| Timekeeper | Time | Fee | Description |
|---|---|---|---|
|  |  |  |  |
| L. Puccini | .2 | $55.00 | Filing of Cash Collateral Budget as requested by Judge. |
| L. Puccini | .3 | $82.50 | Telephone calls to USDC to file pleadings in Bankruptcy Court - Pilot removed. |
| L. Puccini | .3 | $82.50 | Letter to Johnson County Clerk for record. |
| L. Puccini | .3 | $82.50 | Telephone call to Judge Thuma's office to get pleadings transferred from Federal District Court in Pilot case. |
| L. Puccini | .3 | $82.50 | Telephone call from Bankruptcy Court Clerk to obtain Pilot pleadings for Bankruptcy Court. |
| M. Allison | .5 | $137.50 | File bankruptcy documents. |
| L. Puccini | .4 | $110.00 | Letter to Bankruptcy Court Clerk Office re: filing Pilot pleadings from U.S. District Court. |
| Subtotal |  | $632.50 |  |
| Tax |  | $46.26 |  |
| Total |  | <u>$678.86</u> |  |

The Court does not have evidence about how other law firms bill for e-filing, nor whether any of the e-filing in this case required para-professional judgment. It is also unclear what portion of the paralegals' time was spent e-filing. Because Counsel failed to carry its burden, the Court

will cut the total paralegal fees by 5%, or $985.05. For similar reasons, the Court will cut the attorney e-filing fees set out above ($632.50). The total fees cut for e-filing are $1,617.55. The Court will additionally cut $118.28 in taxes,[2] for a total reduction of $1,735.83.

        2. <u>Typing of handwritten drafts and dictation, and other clerical work</u>. The UCC and UST argue that 90% of the paralegal fees should be cut because they are for typing Mr. Puccini's handwritten documents and dictation. Additionally, the UCC objected to various paralegal fees because they were for clerical tasks or duplicated attorney work.

The paralegals testified that 90% of their time was spent typing Mr. Puccini's handwritten documents and dictation. It is not clear from the record how much of this time was billed.

The Court concludes that typing Mr. Puccini's drafts and dictation is non-compensable clerical work. Generally, typing a document already created by an attorney is a clerical task. Counsel did not show that these tasks required professional or para-professional judgment, education, or experience beyond that of clerical staff.

Alternatively, the Court concludes that typing Mr. Puccini's handwritten documents and dictation is an unnecessary duplication of services to the estate: Counsel should not bill for *both* drafting and typing a document. *See In re Heck's Properties, Inc.*, 151 B.R. at 752 (fee applicant bears burden of showing that fees that appear duplicative are not).

It is not clear how much of the paralegal fees was for non-compensable clerical work. The Court will cut the total paralegal fees by 50%, or $9,850.50, as proposed by Counsel at the final hearing. The Court also will cut $720.32 in taxes, for a total reduction of $10,570.82.

---

[2] For all gross receipt tax reductions, the Court used 7.3125%.

F. Duplicate services with special counsel.

The UCC argues that $11,802.4 billed for the *Pilot* and *Cimarex* adversary proceedings should be denied as duplicative of work performed by special counsel. The Court disagrees. The fee application states that Counsel assisted in settling the *Pilot* adversary proceeding. For the *Cimarex* adversary proceeding, Counsel amended schedules, filed the adversary proceeding, and assisted in collections. The billing statements for special counsel are not in evidence, but based on the description of tasks performed by Counsel, the Court finds it unlikely there was duplication of services.

G. The *McNeill* Litigation.

The UCC and UST argue that the Joint Representation Order required Norris and Black to pay half of Counsel's fees charged for the *McNeill* litigation. Counsel counters that the order should be construed to require fee splitting only for charges incurred after the order was entered.

Counsel billed $31,405 in attorney fees and $2,133 in paralegal fees (a total of $33,538.00) in the *McNeill* adversary. Costs and taxes apportioned to the *McNeill* litigation total approximately $3,762.

In the Joint Representation Order, the Court found the Debtor, Norris, and Black likely had equal responsibility for any alleged wrongdoing, "and should share the fees and expenses accordingly." The order required the Debtor to pay 50% of the fees and costs incurred in the adversary proceeding, and required Norris and Black to pay the remaining 50%. Read as a whole, the Joint Representation Order requires fee splitting from the beginning of the adversary proceeding, not from the order entry date.

Section 330(a) approval generally applies to fees sought from the estate, although fees for a Debtor's attorney, no matter the source, are ultimately subject to court review. *See* Fed. R. Bank.

-9-
Case 16-11222-t11    Doc 380    Filed 08/23/17    Entered 08/23/17 17:02:59 Page 9 of 12

P. 2016(a) (entity seeking compensation from the estate shall file an application for compensation); *In re Land*, 116 B.R. 798, 806 (D. Colo. 1990), *aff'd,* 943 F.2d 1265 (10th Cir. 1991) (debtor's attorney seeking fees from estate must get approval under § 330(a); compensation from third parties is ultimately subject to a reasonableness review under § 329); *David & Hagner, P.C. v. DHP I*, 171 B.R. 429, 436 (Bankr. D.D.C. 1994) (section 330 does not apply where payment is from non-debtor source). The Court finds that all *McNeill* fees are reasonable and necessary. However, the Court will only allow half of the *McNeill* fees, taxes, and costs. The Debtor therefore is authorized to pay $16,769 in fees, $656 in costs, and $1,225 in gross receipts tax, for a total of approximately $18,650.

      H.      <u>Reasonableness</u>.

The UCC and UST appear to challenge the reasonableness only of the fees for cash collateral work. The Court weighs each § 330(a)(3) / *Johnson* factor as follows:

| § 330(a)(3) Factor | Discussion |
|---|---|
| | |
| (a)(3)(A) Time spent. | Attorneys spent about 120.1 hours working on cash collateral. This amount of time is reasonable, all things considered. |
| (a)(3)(B) Rates charged. | Mr. Puccini was the primary bankruptcy attorney. The $275 hourly rate charged for his time is reasonable and customary for New Mexico attorneys with his experience. |
| (a)(3)(C) Necessary/beneficial. | The services were beneficial when rendered. |
| (a)(3)(D) Timeliness. | The services were performed timely. |
| (a)(3)(E) Skill/experience. | Mr. Puccini is an experienced bankruptcy lawyer. He was and is sufficiently skilled and experienced in bankruptcy matters to work on cash collateral issues. |
| (a)(3)(F) Customary comp. in non-bankruptcy cases. | The fees are consistent with the customary compensation charged by practitioners in non-bankruptcy cases. |

| *Johnson* Factors | Discussion |
|---|---|
| | |
| Time and labor required. | This factor is more applicable to contingent fee cases. As noted above, the time spent was reasonable in relation to the amount of litigation and negotiation that occurred. |
| Novelty and difficulty of the | This is a relatively complicated chapter 11 case, involving |

| | |
|---|---|
| questions. | a lot of state court litigation, cash collateral issues, and an uncertain industry. The cash collateral issues were relatively sophisticated and complex. |
| Skill requisite to perform the legal service properly. | In the Court's experience, cash collateral issues are more effectively resolved by experienced counsel. |
| Preclusion of other employment due to acceptance of the case. | It is not clear that this case precluded other employment. Because the lawyers bill hourly, this factor is not particularly applicable. |
| Customary fee. | Subject to the adjustments discussed below, the fee is customary for a case of this size and complexity. |
| Fixed or contingent fee. | The hourly rate charged by Counsel was fixed. |
| Time limitations imposed by the client or circumstances. | There were a number of deadlines with which needed to be complied. Counsel provided services in a timely fashion. |
| Amount involved and results obtained. | The fees and results obtained are reasonable. Cash collateral was heavily contested and negotiated. |
| Experience, reputation, and ability of the attorneys. | Mr. Puccini is experienced and able, and has a good reputation. |
| Undesirability of the case. | This case is desirable. |
| Nature and length of professional relationship with the client. | Unknown. |
| Awards in similar cases. | The amount requested is consistent with other cases in which cash collateral was a significant issue. |

Most factors weigh in Counsel's favor or do not apply. After weighing all the factors, the Court concludes that the fees charged for cash collateral services were reasonable.

I. Hourly Rate for Associate Tasks.

The UCC argues that Counsel's hourly rate should be reduced for "associate-level" tasks. Generally, hourly rate is based on experience of the attorney. When examining the hourly rate, courts look to "the prevailing market rate in the relevant community for an attorney of similar experience." *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). The court may draw on its own experience about the case and customary rates. *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990). Some courts have set a different hourly rate based on different types of litigation tasks. *Paulino v. Upper West Side Parking Garage, Inc.*, 1999 WL 325363, at *3 (S.D.N.Y. 1999), *citing Cohen v. W. Haven Bd. F Police Comm'rs.*, 638 F.2d 496, 505 (2d Cir. 1980).

The Court finds that Counsel's hourly rate of $275 is reasonable and in line with the prevailing market rate in New Mexico, for lawyers of their skill and experience. The Court is unaware of other firms reducing their hourly rates for certain tasks, and will not do so here without further evidence.

### III. CONCLUSION

The Court will reduce the billed attorney fees by $632.50, the billed paralegal fees by 55%, or $10,835.55, and the billed taxes by $838.60. The Debtor is only responsible for half of the *McNeill* litigation fees, costs, and taxes ($18,650). The Court authorizes Debtor to pay Counsel $162,045.16. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 23, 2017

Copies to: counsel of record