UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HUNGRY HORSE, LLC,                                       Case. No. 16-11222 t11

      Debtor.

## OPINION

Before the Court is Debtor's application to employ Robert D. Gorman, P.A. and to approve certain employment terms under § 328(a).[1] The Unsecured Creditor's Committee appointed in this case ("UCC") objected to the hourly rates proposed in the application, and also to a provision that Debtor must pay all of the Gorman firm's reasonable attorney fees incurred defending its fee applications. The matter was submitted to the Court on the papers, any right to a final evidentiary hearing being waived. Having considered the matter, the Court enters this opinion.

### I.      FACTS

Debtor is a limited liability company engaged in oilfield services in southeastern New Mexico. Debtor filed this chapter 11 case on May 17, 2016, and sought to retain Ken Wagner Law, P.A. as bankruptcy counsel. In the application, Debtor proposed a number of hourly rates for billing professionals, including $275 for Louis Puccini, Jr. The Court approved the application but did not rule on the proposed hourly rates.

Mr. Puccini left the Wagner firm in May or June, 2017, and was hired by the Gorman firm. On June 16, 2017, the Wagner firm filed a withdrawal and substitution of counsel, giving notice that it was withdrawing as Debtor's bankruptcy counsel, and that Debtor would seek to employ the Gorman firm as replacement counsel.

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.

As part of the Gorman firm application, Debtor seeks Court approval of a $350 hourly billing rate for Messrs. Puccini and Gorman. The parties stipulate that the current hourly rate of Mr. Gorman (a tax attorney) for nonbankruptcy work is $350. In addition, the Debtor seeks approval, pursuant to § 328(a), of the engagement agreement between it and the Gorman firm, and of the following paragraph in particular:

> The Client agrees to pay all reasonable legal fees incurred in obtaining Court approval of all employment and fee applications including dealing with any objections to any of the applications is [sic] also compensable to [the Gorman firm]. The Client agrees to pay all reasonable legal fees including dealing with any objections to court approval . . . The Client agrees that all reasonable fees and expenses incurred by [the Gorman firm] in collecting and/or obtaining approval of its fees and costs by bankruptcy or any other court shall be added to the total fees and costs due from the Client. All such fees and costs if disputed shall be resolved by the Court.

The UCC objects to the Application on three grounds. First, the UCC argues there is no justification for increasing Mr. Puccini's hourly rate by $75. Second, the UCC argues that Mr. Gorman does not have significant experience acting as general bankruptcy counsel for chapter 11 debtors in possession, so his proposed hourly rate is not justified. Finally, the UCC takes issue with the fee defense provision quoted above, arguing it is contrary to the holding of *Baker Botts L.L.P. v. ASARCO LLC,* 135 S. Ct. 2158 (2015).

## II. DISCUSSION

### A. Mr. Puccini's Hourly Rate.

The UCC argues there is no justification for a $75 per hour increase in Mr. Puccini's fees. The Court is inclined to agree. In general, the rates charged to an estate by billing professionals don't change much during most bankruptcy cases. This is not a hard and fast rule, but absent a change in circumstance or a particularly long case, billing rates should be stable. Changing law firms does not seem like a sufficient reason to increase a billing rate. Thus, although the Court did

not rule on Mr. Puccini's billing rate when this case was filed, and will not do so now, the Court likely will view $275 per hour as his presumptive rate in this case. Further, for interim fee payments from the estate to the Gorman firm, Mr. Puccini's time should be compensated at $275 an hour.

B. Mr. Gorman's Hourly Rate.

The UCC also objects to Mr. Gorman's proposed $350 hourly rate. The Court will not rule at this time on the reasonableness of Mr. Gorman's proposed rate. However, if the evidence at any final fee hearing shows that $350 is Mr. Gorman's standard hourly rate for nonbankruptcy clients, the Court sees no reason to require Mr. Gorman to work for less in this case. This observation is based on the assumption that Mr. Gorman's role in the bankruptcy case would be limited to tax-related matters or other areas within his expertise.

C. Reimbursement of Fees for Defending Fee Applications.

1. *Baker Botts v. ASARCO*. The UCC argues that the proposed fee defense provision is barred by the Supreme Court's decision in *Baker Botts LLP v. ASARCO LLC*. In *ASARCO*, the reorganized debtor objected to the final fee application of its bankruptcy counsel. After a six-day trial on the fee application and objection, the bankruptcy court for the Southern District of Texas awarded counsel $120 million in fees, plus an additional $5.2 million in fees incurred defending the fee application. The reorganized debtor appealed. The district court affirmed the $5.2 million fee award, but the Fifth Circuit Court of Appeals reversed. On further appeal, the Supreme Court affirmed the Fifth Circuit. The Supreme Court stated:

> Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, *unless a statute or contract provides otherwise*.

135 S. Ct. at 2164 (quoting *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-253, (2010)) (emphasis added). The dispute in *ASARCO* was whether § 330 could be read as a "statutory exception" to the American Rule. No party argued the "contract exception" to the American Rule.

ASARCO's bankruptcy counsel filed fee applications under "§ 330(a)(1), which provides that a bankruptcy court 'may award . . . reasonable compensation for actual, necessary services rendered by' professionals hired under §327(a)." 135 S. Ct. at 2163. The counsel argued that its fee defense fees were compensable under § 330(a)(1) as "reasonable compensation." The Supreme Court disagreed:

> Section 330(a)(1) does not authorize courts to award "reasonable compensation" *simpliciter,* but "reasonable compensation *for actual, necessary services rendered by*" the § 327(a) professional. § 330(a)(1)(A) (emphasis added). Here, the contested award was tied to the firms' work on the fee-defense litigation and is correctly understood only as compensation for that work. The Government and the dissent properly concede that litigation in defense of a fee application is not a "service" within the meaning of § 330(a)(1); it follows that the contested award was not "compensation" for a "service." Thus, the only way to reach their reading of the statute would be to excise the phrase "for actual, necessary services rendered" from the statute.

*Id.* at 2167. The Supreme Court was not focused on whether the fee charged was "reasonable," but instead on whether it was for "services" rendered to the estate:

> § 330(a)(1) provides compensation for all § 327(a) professionals—whether accountant, attorney, or auctioneer—for all manner of work done *in service of* the estate administrator. More specifically, § 330(a)(1) allows ''reasonable compensation'' only for ''*actual, necessary services rendered*.'' (Emphasis added.) That qualification is significant. The word ''services'' ordinarily refers to ''labor performed for another.'' . . . Thus, in a case addressing § 330(a)'s predecessor, this Court concluded that the phrase '''reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of'' a client. *Woods v. City Nat. Bank & Trust Co. of Chicago,* 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820 (1941); accord, *American United Mut. Life Ins. Co. v. Avon Park,* 311 U.S. 138, 147, 61 S.Ct. 157, 85 L.Ed. 91 (1940). Time spent litigating a fee application against the administrator of a bankruptcy estate cannot be fairly

>   described as ''labor performed for''—let alone ''disinterested service to''—that administrator.

135 S. Ct. at 2165.

2. *In re Boomerang Tube, Inc*. After *ASARCO*, bankruptcy professionals began including fee defense provisions in their retention agreements. Such provisions, it was hoped, would come within the contract exception to the American Rule, since *ASARCO* had foreclosed the statutory exception. The leading post-*ASARCO* case to address this attempt is *In re Boomerang Tube, Inc.*, 548 B.R. 69 (Bankr. D. Del. 2016). *Boomerang Tube* involved an employment application by proposed counsel for the unsecured creditors' committee. The counsel and the committee had included a fee-defense provision in their retention agreement, to which the United States Trustee objected. *Id.* at 70.

Proposed counsel argued that fee defense provisions are similar to indemnity provisions, which have been allowed. *Compare In re DEC Int'l, Inc.*, 282 B.R. 423, 424 (W.D. Wis. 2002) (indemnification provisions are not per se invalid); and *In re Joan & David Halpern, Inc.*, 248 B.R. 43, 47 (Bankr. S.D.N.Y. 2000) (allowing an indemnification provision as reasonable); *with In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991) (indemnification provisions for investment bankers are inappropriate); *In re Mortgage & Realty Trust*, 123 B.R. 626, 630-31 (Bankr. C.D. Cal. 1991) (disallowing any indemnity provision as inconsistent with professionalism); *In re Allegheny Int'l, Inc.*, 100 B.R. 244, 247 (Bankr. W.D. Pa. 1989) (disallowing indemnification for ordinary negligence in financial advisor's retention because "holding a fiduciary harmless for ordinary negligence is shockingly inconsistent with the strict standard of conduct for fiduciaries").

After analyzing *ASARCO*, other case law, and §§ 327-330, the Delaware bankruptcy court sustained the U.S. Trustee's objection to the fee defense provision. First, the court held that § 328 is not a statutory exception to the American Rule:

> The Court concludes that although section 328 is an exception to section 330, it, like section 330, is not a ''specific and explicit'' statute which ''authorize[s] the award of 'a reasonable attorney's fee,' 'fees,' or 'litigation costs,' '' that ''refer[s] to a 'prevailing party' in the context of an 'adversarial action.''' *ASARCO,* 135 S. Ct. at 2164 . . . Therefore, the Court concludes that section 328 does not provide a statutory exception to the American Rule and cannot provide authority for approval of the fee defense provisions.

548 B.R. at 72. Next, the court held that the retention agreement could not come within the contract exception to the American Rule:

> [T]he retention agreements in this case are not contractual exceptions to the American Rule. Here, there is not a contract between two parties providing that each will be responsible for the other's legal fees if it loses a dispute between them. Rather, here there is a contract between two parties (the Committee and Committee Counsel) that in the event Committee Counsel win a challenge to their fees, a third party (the estate) will pay their defense costs even if the estate is not the party who objected. As the UST notes, this is not the typical contract modifying the American Rule.
>
> Nor can this contract bind the estate, which is not a party to it. *Motorsport Eng'g,* 316 F.3d at 29; *Abraham Zion Corp.,* 761 F.2d at 103. The fact that it was negotiated between sophisticated parties (the Committee and Committee Counsel) is beside the point; it seeks to bind a non-party to that agreement.

*Id. at* 74-75. Third, the court held that fee defense provisions could not be approved under § 328 in any event, because they could never be deemed "reasonable terms":

> The fee defense provisions are not reasonable terms for the employment of Committee Counsel because they do not involve any services for the Committee. Rather, they are for services performed by Committee Counsel only for their own interests.

*Id* at 75. Finally:

> The cases that considered market factors relevant to the question of whether defense fees can be recovered all pre-dated the *ASARCO* decision which expressly rejected the consideration of such factors in determining that issue. Therefore, the Court concludes that *ASARCO* prevents the Court from concluding that section 328

permits defense fees even if they were routinely allowed by the market in bankruptcy or non-bankruptcy contexts prior to that ruling.

*Id.* at 78.[2]

       3.    <u>*In re Nortel Networks*</u>. One case decided after *Boomerang Tube* held, in different circumstances, that a fee defense provision came within the contract exception to the American Rule. In *In re Nortel Networks, Inc.,* 2017 WL 932947 (Bankr. D. Del.), an indenture trustee asserted a claim against the bankruptcy estate, including an $8.1 million claim for attorney fees incurred during the case. The indenture trustee also asserted the right to be paid for the fees incurred defending the $8.1 million fee request. The indenture, which was a contract between the debtor and, inter alia, the indenture trustee, contained a provision allowing the trustee to be reimbursed for such fees. The *Nortel* court, after reviewing *ASARCO* and *Boomerang Tube*, concluded that the indenture came within the contract exception of the American Rule:

> The Court finds that here, the Indenture is a contract which qualifies for an exception to the American Rule . . . The Indenture is clearly outside the circumstances of *ASARCO* and *Boomerang*.

2017 WL 932947, at *9. However, *Nortel's* relevance is limited by the fact that the court did not have to decide whether the fee defense provision was a reasonable term under § 328(a), because counsel for the indenture trustee was not employed by the bankruptcy estate.

       4.    <u>The Interplay of §§ 328 and 330</u>. The Debtor asks that the fee defense provision be approved under § 328(a), which provides:

---

[2] *Boomerang Tube* is cited by *In re Rose*, 561 B.R. 70, 76 (Bankr. W.D. Mich. 2016), a chapter 13 case, for the proposition that the contract exception cannot apply to an engagement agreement not signed by the estate. *See also In re Capitol Litho Printing Corp.*, 2017 WL 3225910 (Bankr. D. Ariz.) (ruling on a fee application brought by a real estate broker, the court discussed but distinguished *Boomerang* because, although there was a fee defense provision in the employment agreement at issue, the court order approving the broker's employment limited compensation to the brokerage fee and expenses allowable under § 330).

-7-

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

If employment terms and conditions are approved by a bankruptcy court under § 328(a), then the professional's compensation is governed by those terms and conditions, rather than the general "reasonable compensation for services rendered" language of § 330(a)(1)(A). *See* § 330(a)(1) ("After notice to the parties in interest and the United States Trustee and a hearing, *and subject to* section 326, *328*, and 329, the court may award . . . .") (emphasis added). Case law makes clear that the "subject to" qualification in § 330(a)(1) means that the previously approved § 328(a) terms and conditions control the professional's compensation. *See, e.g., Donaldson Lufkin & Jenrette Securities Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.),* 123 F.3d 861 (5th Cir. 1997):

> The court must therefore set the compensation award either according to § 328 or § 330. If prior approval is given to a certain compensation, § 328 controls and the court starts with that approved compensation, modifying it only for development unforeseen when originally approved.

123 F.3d at 862; and *In re Reimers*, 972 F.2d 1127 (9th Cir. 1992):

> Under section 328, where the bankruptcy court has previously approved the terms for compensation of a professional, when the professional ultimately applies for payment, the court cannot alter those terms unless it finds the original terms `to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.'

972 F.2d at 1128. *See also In re Merry-Go-Round Enterprises, Inc.,* 244 B.R. 327, 336 (Bankr. D. Md. 2000) (citing *Nat'l Gypsum* and *Reimers* and holding that § 328(a), rather than § 330

governed the fee application); and *In re Benassi,* 72 B.R. 44, 47 (Bankr. D. Minn. 1987) (§ 330 is subject to § 328).

5. <u>Does *ASARCO* Foreclose Approval of a Fee Defense Provision under § 328(a)</u>? The question here is whether *ASARCO* prevents the Court from approving a fee defense provision in a retention agreement as a "reasonable term and condition" under § 328(a). The *Boomerang Tube* court held that it does. 548 B.R. at 75. This Court does not read *ASARCO* as requiring such a result. The *ASARCO* court concluded that § 330 was not a statutory exception to the American Rule. In reaching that conclusion, the Supreme Court construed § 330 as limiting an attorney to compensation for services rendered to its client. Because no compensation, however reasonable, can ever be awarded to an attorney under § 330 unless it is for services rendered to its client, the Supreme Court held that fee defense fees were not compensable under § 330(a). In *ASARCO*, the bankruptcy court had not approved a fee defense provision in a retention agreement under § 328(a).

*ASARCO* does not hold that a fee defense provision can never be a "reasonable term" under § 328(a). Nothing in the Code says that an employment term must benefit the estate to be reasonable. A typical employment agreement between a lawyer and client has many terms; some benefit the client, while others benefit the lawyer. Considered together, they may be reasonable. For example, the following are included in the engagement agreements submitted by attorneys and other professionals in this case:

- The client agrees to pay New Mexico gross receipts tax, even though it is a tax on the lawyer, not the client;
- Retainer requirements, including initial retainers and replenishing retainers;
- Allowing the lawyer to withdraw if the retainer is not replenished;
- Prompt payment of monthly bills;
- Returned check fees;
- Interest on any advanced costs not reimbursed within 30 days;
- Guarantees of payment;

- Granting or acknowledging a lien on any recovery; and
- Granting a power of attorney to endorse settlement checks.

Do these terms benefit the client? Not directly. The direct beneficiary is the lawyer. The client benefits indirectly, however. By agreeing to the terms, the client obtains the services of needed, able professionals. For that reason, many of these terms could be reasonable under § 328(a).

In jurisdictions such as New Mexico, which typically have smaller bankruptcy cases with smaller fees, fee defense can be a sizeable percentage of the total fees billed. If estate counsel were forced to successfully defend its fees "on its own dime," the net compensation in a bankruptcy case could be substantially reduced.

The pre-*ASARCO* experience in this district of allowing fees for successfully defending fee applications has been good for the most part. In general, objections to fee applications have been limited to bona fide disputes, and the fee defense fees have been reasonable. The system has worked pretty well. There is no need to change the system unless *ASARCO* requires it. The Court does not read *ASARCO* as mandating a change, if a properly drafted employment term is timely presented to the Court and approved under § 328(a).

6. The Proposed Fee Defense Provision in this Case.

The Court concludes that the contract exception to the American Rule remains viable in bankruptcy cases. In the Court's view, a properly drafted fee defense provision could be a "reasonable term" under § 328(a), violating neither the letter nor spirit of *ARASCO*. Such a provision should:

- Be agreed to by the bankruptcy estate (thus avoiding the problem addressed in *Boomerang Tube*);
- Allow the bankruptcy court to review and approve the reasonableness of any fee defense fees sought;

- Provide that the estate will also agree to a similar provision for committee counsel;[3] and
- Provide that no fees will be allowed for unsuccessful fee defense work.

The following is an example of a fee defense paragraph that might be approved as reasonable under § 328(a):

> Fee Defense. The Client agrees to pay all reasonable legal fees and expenses incurred by the Firm, and also by any counsel retained by the unsecured creditors' committee (if one is formed in the Client's bankruptcy case) for successfully defending their respective fee applications. The bankruptcy court must approve all of such fees as reasonable. The Client will have no obligation to pay for any fees or expenses the Firm incurs defending fees that are not allowed.

### III. CONCLUSION

The Court will not rule at this time on the reasonableness of Messrs. Puccini and Gorman's proposed hourly rates. However, the Court takes the general view that, absent unusual circumstances, the billing rates of attorneys should remain fairly constant during a bankruptcy case. The Court also believes that the hourly rates charged in a bankruptcy case can be the same as that charged outside of bankruptcy, for the same type of work and expertise. With respect to the UCC's challenge to the fee defense provision, the Court would consider approving a provision similar to the one set out above as part of the initial employment application process. Mr. Puccini is directed to submit a proposed order consistent with this opinion.

/s/ David T. Thuma
———————————————————————
Hon. David T. Thuma
United States Bankruptcy Judge

---

[3] This provision is needed to level the playing field, which otherwise is often tilted against committee counsel.

Entered: September 20, 2017
Copies to: Counsel of Record