UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HUNGRY HORSE, LLC,    Case No. 16-11222 t11

    Debtor.

## **OPINION**

Before the Court is the second fee application of Debtor's counsel. In the application, counsel asks to be reimbursed for amounts it paid to two lawyers who worked as contract attorneys. The Debtor never sought to employ the contract attorneys; they never disclosed their compensation terms or disinterestedness; and their employment was never approved by the Court. Having reviewed the application and an objection thereto, the Court concludes that the reimbursement request must be denied as contrary to §§ 327-330[1] and Rules[2] 2014 and 2016.

### I.    FACTS[3]

Debtor is a limited liability company engaged in oil field services in eastern New Mexico. It filed this chapter 11 case on May 17, 2016.

On the petition date, Debtor filed an application to employ Ken Wagner Law, P.A. (the "Wagner Firm") as bankruptcy counsel. The employment application stated in part that "no

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.
[2] A Federal Rule of Bankruptcy Procedure.
[3] These facts were taken from the fee application and supplement, or else from the docket in this bankruptcy case, of which the Court takes judicial notice. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

arrangements have been made to share the above-disclosed compensation with any other person, unless they are members or associates of the law firm of Ken Wagner Law, PA."

Attached to the employment application is an engagement contract which, inter alia, defined costs to "include, but are not limited to, investigation costs, court costs, filing fees . . .unpaid checks returned to Wagner Lawfirm for any reason, photocopies . . . deposition costs, long distance telephone charges, travel expenses, fax ($0.50 per page) and mailing costs, and computer research, as otherwise may be required."

Also attached to the application is Disclosure of Compensation of Attorney for Debtor(s). The disclosure stated in part "I have not agreed to share the above-disclosed compensation with any other person unless they are members or associates of my law firm."

The Court approved the employment application on June 15, 2016, effective as of the petition date. The Court's order provided that all compensation and hourly rates were subject to final Court approval.

In response to counsel's first fee application, the Court entered an order on August 23, 2017, approving fees, costs, and tax of $162,045.16.

The Wagner Firm filed a second fee application on April 12, 2018 (the "Application").[4] The Application sought approval of $103,095.50 of fees, $7,559.52 of taxes, and $9,706.03 of costs.

Among the costs, there is a $2,390.56 line item for "Cost Advance." It appears, although it is never made clear in the Application or elsewhere, that this is mostly what the Wagner Firm paid to Elizabeth Taylor, a partner in Taylor & McCaleb, PA, and to Lorien House, a sole practitioner.

---

[4] Mr. Puccini left the Wagner Firm on or about mid-June, 2017, and began working on Robert D. Gorman, P.A. The Second Application relates to work done by the Wagner Firm before Mr. Puccini's transition to the Gorman Firm.

From what the Court can tell, the Wagner Firm paid Ms. Taylor about $1,359.47, and Ms. House about $837.50.

Debtor never sought to employ Mss. Taylor or House pursuant to § 327. The contract attorneys did not file Rule 2014/2016 disclosures. No employment orders were entered.

The Unsecured Creditor's Committee appointed in this case ("UCC") objected to estate reimbursement of amounts the Wagner Firm paid Mss. Taylor and House, arguing that professionals must be employed under § 327 to be paid from the estate, and that hiring contract attorneys and seeking reimbursement of their fees as "costs" violates the Code.

In response to the UCC objection, the Wagner Firm filed a Supplement to the Application, which stated in part:

> Elizabeth Taylor and Lorien House both acted as legal assistants and paralegals doing legal research for the Wagner law firm. Neither acted as attorney or professionals for Hungry Horse and did not represent Hungry Horse in any matter at all.
>     A. Lorien House is an attorney and does legal research for the Wagner law firm but is not employed by the Wagner law firm. Lorien House did legal research on the nature, extent, and priority of Commercial Code liens.
>     B. Elizabeth Taylor is an expert water rights attorney. She was primarily responsible for researching Hungry Horse's complicated water rights status in the State Engineer title records and in the Lea County water basin and would, if necessary, have testified as an expert water rights witness in litigation on the water rights.

Taylor & McCaleb sent fee bills to the Wagner Firm. Three Taylor & McCaleb bills are attached to the Application.[5] Ms. Taylor's time was billed at $225 per hour. Her firm billed the Wagner Firm $100 an hour for paralegal time. The Court has not been provided an engagement letter between Taylor & McCaleb and the Wagner Firm, if one exists.

---

[5] The February 28, 2017, bill had a previous balance of $1,484.79, apparently for work done during the first fee application period.

Ms. House was paid $837.50 for her work. No fee bills or engagement letter are attached, so the Court has no information about the terms of her contract employment.

It is undisputed that neither Ms. Taylor nor Ms. House is a member, partner, or regular associate of the Wagner Firm.

## II.     DISCUSSION

A.     Compensation of Professionals From the Bankruptcy Estate.

A number of Bankruptcy Code sections and Rules govern the payment of attorneys and other professionals from bankruptcy estate assets. Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

§ 327(a) applies to chapter 11 debtors in possession.[6] Section 329 provides in part:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Next is § 330(a), which provides:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--
>     (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>     (B) reimbursement for actual, necessary expenses.[7]

---

[6] § 1107(a) provides in part that a "debtor in possession shall have all of the rights ... and shall perform all the functions and duties ... of a trustee serving in a case under this chapter."
[7] Approved fees and costs are administrative expenses. § 503(b)(2).

Two Rules to implement §§ 327-330. The first, Rule 2014, provides in part:

> (a) Application for an order of employment
> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee . . . . The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.
> (b) Services rendered by member or associate of firm of attorneys or accountants
> If, under the Code and this rule, a law partnership or corporation is employed as an attorney . . . any partner, member, or regular associate of the partnership, corporation or individual may act as attorney or accountant so employed, without further order of the court.

The other rule is 2016(a):

> (a) Application for compensation or reimbursement
> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised . . . .

The purpose of the somewhat elaborate and cumbersome Code sections and Rules is to contain the bankruptcy estate's expenses. *In re Haley,* 950 F.2d 588, 590 (9th Cir. 1991). The procedures also allow the bankruptcy court to review the competency, experience, and integrity of debtor's counsel and other professionals. *In re Arkansas Co.,* 798 F.2d 645, 648 (3rd Cir. 1986). Another court opined that the employment and payment requirements "prevent unscrupulous individuals from taking advantage of the bankruptcy process." *Farinash v. Vergos (In re Aultman*

*Enters.),* 264 B.R. 485, 490 (E.D. Tenn. 2001). *See generally* 3 Collier on Bankruptcy ¶ 327.03 (16th ed.) (prior approval gives the court an opportunity to review any conflicts, the professional's competency, and the need for the services).

B.   <u>Fee Sharing Prohibited</u>.

Section 504 provides in part:

> (a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share--
> (1) any such compensation or reimbursement with another person; or
> (2) any compensation or reimbursement received by another person under such sections.

Bankruptcy Rule 2016, parts of which were cited above, also has provisions related to fee sharing:

> (a) Application for compensation or reimbursement
> . . . An application for compensation shall include a statement as to . . . whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor . . . .
> (b) Disclosure of compensation paid or promised to attorney for debtor
> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . .

C.   <u>Attorneys and "Professional Persons</u>."

Section 101(4) defines attorney as an "attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law." The term "professional person," used in §§ 327, 328, and 330, is not defined. Section 327, however, makes clear that the term includes attorneys: "the trustee . . . may employ one or more attorneys . . . or other professional persons . . . ."

D. Applying the Code Sections and Rules to the Application.

1. <u>Mss. Taylor and House are Attorneys and Professional Persons</u>. Taylor and House are attorneys, licensed to practice law in New Mexico. They both fall squarely within the definition of attorneys, and therefore are professional persons within the meaning of § 327 and § 330.

The Wagner Firm argues that Taylor and House "acted as legal assistants and paralegals doing legal research for the Wagner law firm. Neither acted as attorney or professionals for Hungry Horse and did not represent Hungry Horse in any matter at all." This argument fails for two reasons.

First, Mss. Taylor and House did attorney work, not paralegal work. Ms. Taylor, a water law expert, gave legal advice to the Debtor about the ownership and transfer of water rights. She also was ready to testify as an expert witness on water law. Ms. House did legal research and gave advice about Uniform Commercial Code security interests. Both areas of the law are complex and nuanced; advice in both areas is universally regarded as something obtained from attorneys rather than paralegals. The work performed shows that Taylor and House are attorneys and "professional persons" within the meaning of § 327. *Compare Cavazos v. Simmons,* 90 B.R. 234, 239, n. 14 (N.D. Tex. 1988) (services rendered by a paralegal are not professional in nature, so prior court authority is not needed to employ them).

Second, the rates charged by Taylor show that she is a professional, not a paraprofessional. In *Rodriguez-Quesada v. U.S. Tr.*, 222 B.R. 193 (D.P.R. 1998), the court held that a lawyer was a professional person because the "per/hour billing rate sought by appellant is well above the hourly rate charged for paralegals in this community." 90 B.R. at 198. Ms. Taylor charges her time at $225 per hour, which is an attorney rate in Albuquerque, New Mexico. Ms. Taylor's law firm employs a paralegal, whose time is billed to clients at $100 per hour. This is similar to the rate the

Wagner Firm charged for paralegal time ($90 per hour). Paralegal rates of $225 per hour are unheard of in New Mexico.

The Court has no information about Ms. House's billing rate. Because Ms. House rendered professional services to the Wagner Firm, however, the Court will assume that she billed for her time commensurately.

2. *The Wagner Firm's Arrangement with Taylor and House may not be "fee sharing."* Fee sharing "[i]n the context of bankruptcy compensation . . . consist[s] of taking an existing fee and splitting it among two or more professionals with each having a present and concurrent right to payment." *In re Mazzei,* 522 B.R. 113, 132-33 (Bankr. W.D. Pa. 2014). Referral fees are a good example of the type of fee sharing prohibited by § 504(a). *See, e.g., In re Smith,* 397 B.R. 810, 819 (Bankr. E.D. Tex. 2008) (§ 504 prohibits virtually all referral fees); 4 Collier on Bankruptcy ¶ 504.01[1] (16th ed.) (referral fees clearly prohibited by § 504).

It is a closer question whether § 504 prohibits debtor's counsel from hiring contract attorneys. The majority rule seems to be that such a practice violates § 504. *See, e.g., In re Tarasiak,* 280 B.R. 791 (Bankr. D. Mass. 2002) (fees disallowed under § 504(a) for payments to an independent contractor professional); *In re Egwu,* 2012 WL 5193958 (Bankr. D. Md. 2012) (coverage attorney employed by debtor's counsel constituted prohibited fee sharing); *In re Bradley,* 495 B.R. 747, 767 n. 11 (Bankr. S.D. Tex. 2013) (use of an undisclosed "appearance attorney" violated § 504(a)).

Several courts have questioned whether such a subcontract relationship is really fee sharing. One court stated:

> It is debatable whether most contract arrangements actually present the issue of prohibited fee sharing. Presumably, payment of the contractor in most cases is not dependent on the employing firm collecting its fees; the firm will be liable to the

contractor regardless of whether or not it is paid in the case on which the contractor worked.

*In re Ferguson,* 445 B.R. 744, 754, n. 14 (Bankr. N.D. Tex. 2011). Similarly, in *In re Wilkerson,* 2016 WL 3402457 (Bankr. D.D.C.), the court addressed a relationship between debtor's court-approved counsel and a contract attorney hired to work on an appeal. The court found that there was no fee-sharing:

> Although it is a close call, I do not draw that inference [i.e. that a fee sharing arrangement exists] from the circumstances of this case. Fisher [debtor's counsel] has already paid Weiner [contract attorney] for her work at $65 per hour. There was no agreement that Weiner was to share in the amounts that Fisher might recover pursuant to Fisher's eventual application for compensation and reimbursement of expenses, and Fisher does not intend to share the compensation and reimbursement of expenses he receives with Weiner.

2016 WL 3402457, at *2. The *Wilkerson* court points out that in some fee-sharing cases, the real concern is the failure to comply with § 327. While discussing *Tarasiak*, for example, the *Wilkerson* court stated:

> There was no meaningful analysis of whether there was an arrangement for sharing fees, and the apparent real basis for disallowing fees in that case was that the independent contractor professional had not been approved for employment pursuant to § 327(a).

*Id. See also In re Kewriga,* 2002 WL 484942 (Bankr. D. Mass. 2002) (although the court mentions § 504(a) in its discussion of whether to approve fees paid by debtor's counsel to a contract attorney, the basis for denying the fee request was failure to comply with § 327).

The Court's view is that contract attorneys don't present a problem unless debtor's counsel wants to be reimbursed from the estate for the cost of the contract attorney. In such an event, the issue is primarily one of complying with § 327(a), et al., rather than fee-sharing. Thus, in this case, the Court need not decide whether the Wagner Firm's contracts with Mss. Taylor and House crossed the line into fee sharing. Whether they did or not, the Wagner Firm cannot be reimbursed

for amounts paid or owed to Taylor and House, because the contract attorneys did not comply with § 327.

3. <u>Mss. Taylor and House should have complied with § 327(a)</u>. Courts have generally read § 327(a) and related provisions[8] to mean that attorneys may not be paid from the estate unless their employment has been approved. *See, e.g., Interwest Bus. Equip., Inc. v. United States Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 318 (10th Cir. 1994) ("[A]ny professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate"); *In re Albrecht*, 245 B.R. 666, 671–72 (10th Cir. BAP 2000) (quoting *Interwest*); *In re Kearney*, 581 B.R. 644, 646-47 (Bankr. D.N.M. 2018) (same). *See generally* 4 Collier on Bankruptcy ¶ 327.03[2][c]:

> A professional failing to comply with the requirements of the Code or Bankruptcy Rules relating to employment may forfeit the right to compensation .... The services for which compensation is requested should be performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering such services may be considered an officious intermeddler or a gratuitous volunteer.

In *Tanzi v. Shulkin*, 2006 WL 2927660 (W.D. Wa.), the district court affirmed the bankruptcy court's denial of fees for contract attorneys, ruling:

> Section 330 of the Bankruptcy Code permits an attorney or other professional person to receive reasonable compensation for services rendered to the bankrupt estate pursuant to 11 U.S.C. § 327. Both section 327 and Bankruptcy Rule 2014 generally require approval of the bankruptcy court before an attorney can enter the employ of the estate. In the absence of a bankruptcy court order approving retention, contract attorneys cannot be paid for services to the estate. 11 U.S.C. § 327.

2006 WL 2927660, at *7. *See also In re ACandS, Inc.,* 297 B.R. 395, 405 (Bankr. D. Del. 2003) (estate-employed professionals cannot subcontract with their own subsidiaries, unless the subsidiaries comply with § 327(a)); *In re United Companies Financial Corp.,* 241 B.R. 521

---

[8] §§ 330(a) and 503(b)(2).

(Bankr. D. Del. 1999) (a professional person cannot avoid § 327 through subcontracting arrangements). *See generally* 4 Collier on Bankruptcy ¶ 504.02[1][b] (16th ed.) ("professionals whose retention should be, but has not been, reviewed and determined by the bankruptcy court under section 327 cannot avoid that review by subcontracting with a retained professional").

Here, the Wagner Firm asks that the amounts paid or owed to Mss. Taylor and House be reimbursed by the estate. The request must be denied, because the Court never approved of Debtor's employment of either attorney. The Wagner Firm should pay the contract attorneys as agreed, but cannot be reimbursed from the estate for the cost.

### III. CONCLUSION

Ms. Taylor and Ms. House are attorneys; both did professional legal work for the Debtor. The Wagner Firm should have advised them to file employment applications and Rule 2014/2016 disclosures, and to get their employment approved by the Court. Because no such advice was given, the Wagner Firm's request to treat the amounts paid to Taylor and House as "cost advances" must be denied. The Court will enter a separate order.

*[signature]*

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 31, 2018

Copies to: counsel of record